# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

JON N. W.,               )

                       )

        Plaintiff,      )     Case No. 1:22-cv-4624

v.                  )

                       )     Magistrate Judge Jeannice W. Appenteng

LELAND DUDEK, Acting     )

Commissioner of Social Security,[1] )

                       )

        Defendant.    )

## MEMORANDUM OPINION AND ORDER

Plaintiff Jon N. W. seeks to overturn the final decision of the Acting Commissioner of Social Security ("Commissioner") denying his applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act. The parties consented to the jurisdiction of the United States Magistrate Judge pursuant to 28 U.S.C. § 636(c), and plaintiff filed a brief explaining why the Commissioner's decision should be reversed or the case remanded. The Commissioner responded with a competing motion for summary judgment in support of affirming the decision. After review of the record and the parties' respective arguments, the Court grants the Commissioner's motion.

## BACKGROUND

Plaintiff protectively applied for DIB and SSI in December 2019, alleging disability since June 8, 2019 due to a host of conditions including: total right hip

---

[1] Leland Dudek became the Acting Commissioner of Social Security on February 16, 2025. He is automatically substituted as the named defendant pursuant to FED. R. CIV. P. 25(d).

replacement, osteoarthritis, degenerative joint disease of the hips, obesity, sleep apnea, extremely flat feet, scoliosis, one longer leg, sciatica, knee pain, broken right ankle, fused neck vertebrae, depression, elevated cholesterol, prediabetes, memory loss, and seizures upon laughing too hard. Administrative Record ("R.") 236-44, 259. Born in August 1974, plaintiff was 44 years old as of the alleged onset date, making him a younger person (under age 50). 20 C.F.R. § 404.1563(c); 20 C.F.R. § 416.963(c). R. 236. Plaintiff completed two years of college and was employed as a licensed insurance agent. R. 260. He stopped working in June 2019 due to his conditions and has not engaged in substantial gainful activity since that date.

The Social Security Administration denied plaintiff's applications initially on October 21, 2020, and upon reconsideration on March 16, 2021. R. 55-140. Plaintiff filed a timely request for a hearing and on October 25, 2021, he appeared before an administrative law judge ("ALJ"). R. 20. The ALJ heard testimony from plaintiff, who was represented by counsel, and from vocational expert Lisa Gagliano (the "VE").[2] R. 22-54. On December 21, 2021, the ALJ found that plaintiff's: degenerative joint disease of both hips, status post total right hip replacement; depressive disorder; obesity; syncope episodes (associated with laughing or coughing); status post broken right ankle; status post cervical spine fusion with degenerative disc disease of the cervical spine; and degenerative disc disease of the lumbar spine are all severe impairments, but that they do not alone or in combination with plaintiff's

---

[2] The hearing was held telephonically due to the COVID-19 pandemic.

2

non-severe impairments meet or medically equal any of the listed impairments in
20 C.F.R. Part 404, Subpart P, Appendix 1. R. 147-49.

After reviewing the evidence, the ALJ concluded that plaintiff has the RFC to
perform light work involving: standing for two hours in an eight-hour workday; no
climbing of ladders, ropes, or scaffolds; occasional climbing of stairs and ramps;
occasional balancing, stooping, kneeling, crouching, and crawling; occasional
concentrated exposure to extreme cold, vibration, odors, dust, fumes, gases, and
other pulmonary irritants; and no exposure to unprotected heights, hazardous
machinery or driving a motor vehicle. R. 149. Plaintiff can also "understand,
remember, concentrate, persist and perform simple, routine[,] repetitive tasks with
the ability to follow both simple and detailed but uninvolved oral written or
diagrammed instructions in a low stress environment defined as having simple
work-related decisions and routine changes in the work setting." *Id.* Plaintiff is able
to have brief, superficial interaction with the public, and after the probationary
period, occasional interaction with co-workers. Finally, plaintiff can attend for two
hours at a time and then needs a 10-minute break which can be accommodated by
routine breaks and lunch. R. 149-58.

The ALJ accepted the VE's testimony that a person with plaintiff's
background and this RFC could not perform plaintiff's past work as a solicitor or
sales representative, but could perform a significant number of other jobs available
in the national economy. R. 158-60. As a result, the ALJ concluded that plaintiff
was not disabled at any time from the alleged disability onset date through the date

of the decision. R. 160. The Appeals Council denied plaintiff's request for review on July 1, 2022. R. 1-6. That decision stands as the final decision of the Commissioner and is reviewable by this Court under 42 U.S.C. § 405(g). *See Haynes v. Barnhart*, 416 F.3d 621, 626 (7th Cir. 2005); *Whitney v. Astrue*, 889 F. Supp. 2d 1086, 1088 (N.D. Ill. 2012).

In support of his request for reversal or remand, plaintiff argues that the ALJ: (1) erred in evaluating his subjective statements regarding his symptoms; (2) improperly weighed the opinion evidence of record; and (3) made a flawed RFC determination.[3] For reasons discussed in this opinion, the Court finds that the ALJ's decision is supported by substantial evidence.

## DISCUSSION

### A. Standard of Review

A claimant is disabled within the meaning of the Social Security Act if he is unable to perform "any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."[4] 20 C.F.R. § 404.1505(a). In determining whether a claimant suffers from a disability, an ALJ must conduct a standard five-step inquiry, which

---

[3] Arguments not specifically addressed in this opinion were not reasonably developed and have been waived. *See, e.g., Crespo v. Colvin*, 824 F.3d 667, 673 (7th Cir. 2016) ("perfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority, are waived").

[4] Because the regulations governing DIB and SSI are substantially identical, for ease of reference, only the DIB regulations are cited herein.

involves analyzing: "(1) whether the claimant is currently employed; (2) whether [the claimant] has a severe impairment or a combination of impairments that is severe; (3) whether [the claimant's] impairments meet or equal any impairments listed as conclusively disabling; (4) whether [the claimant] can perform . . . past work; and (5) whether [the claimant] is capable of performing any work in the national economy." *Gedatus v. Saul*, 994 F.3d 893, 898 (7th Cir. 2021) (citing 20 C.F.R. § 404.1520(a)-(g)). If the claimant meets his burden of proof at steps one through four, the burden shifts to the Commissioner at step five. *Id.*

In reviewing an ALJ's decision, the Court "will not reweigh the evidence, resolve debatable evidentiary conflicts, determine credibility, or substitute [its] judgment for the ALJ's determination so long as substantial evidence supports it." *Warnell v. O'Malley*, 97 F.4th 1050, 1052-53 (7th Cir. 2024) (quoting *Gedatus*, 994 F.3d at 900). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019) (citation omitted). "[S]ocial-security adjudicators are subject to only the most minimal of articulation requirements," and ALJs need only provide "an explanation for how the evidence leads to their conclusions that is sufficient to allow us, as a reviewing court, to assess the validity of the agency's ultimate findings and afford [the appellant] meaningful judicial review." *Warnell*, 97 F.4th at 1053-54 (internal quotations omitted) (in "shorthand terms," an ALJ must build a "logical bridge from the evidence to his conclusion"); *Morales v. O'Malley*, 103 F.4th 469, 471 (7th Cir. 2024).

B.      Analysis

1.      **Subjective Symptom Evaluation**

Plaintiff argues that the case must be reversed or remanded because the ALJ erred in assessing his subjective statements regarding his symptoms. Dkt. 17 at 9-12; Dkt. 24 at 3-10.[5] In evaluating a claimant's subjective symptom allegations, an ALJ must consider several factors including: the objective medical evidence; the claimant's daily activities; the location, duration, frequency, and intensity of the claimant's pain or other symptoms; precipitating and aggravating factors; type, dosage, effectiveness, and side effects of medication; treatment and other measures besides medication taken to relieve pain or other symptoms; and functional limitations due to pain or other symptoms. 20 C.F.R. § 404.1529(c); SSR 16-3p, 2017 WL 5180304, at *5, 7-8 (Oct. 25, 2017). "'An ALJ need not discuss every detail in the record as it relates to every factor,' but an ALJ may not ignore an entire line of evidence contrary to her ruling." *Benito M. v. Kijakazi*, No. 20 C 5966, 2022 WL 2828741, at *8 (N.D. Ill. July 20, 2022) (quoting *Grotts v. Kijakazi*, 27 F.4th 1273, 1278 (7th Cir. 2022)). "As long as an ALJ gives specific reasons supported by the record, [the Court] will not overturn a credibility determination unless it is patently wrong." *Grotts*, 27 F.4th at 1279; *Murphy v. Colvin*, 759 F.3d 811, 816 (7th Cir. 2014) (patently wrong "means that the decision lacks any explanation or support."). "Subjective statements by claimants as to pain or other symptoms are not alone

---

[5] This opinion cites to the CM/ECF number at the top of the page.

conclusive evidence of disability and must be supported by other objective evidence."
*Grotts*, 27 F.4th at 1278.

Plaintiff first objects to the fact that the ALJ cited both SSR 16-3p and an old regulation, SSR 96-7p, in assessing his testimony. R. 151. In plaintiff's view, the reference to a now-defunct regulation constitutes reversible error because it suggests that the ALJ evaluated his statements under the wrong legal standard and improperly considered his character for truthfulness. Dkt. 17 at 10; Dkt. 24 at 3-5 (citing *Minger v. Berryhill*, 307 F. Supp. 3d 865 (N.D. Ill. 2018)) (expressing concern that use of certain boilerplate language may indicate the ALJ applied the wrong evidentiary standard). The Court agrees that the citation to SSR 96-7p is odd but since the ALJ provided a thorough explanation for rejecting plaintiff's testimony considering the proper factors set forth in SSR 16-3p, any error arising from the citation is harmless. *See Gedatus v. Saul*, 994 F.3d 893, 900 (7th Cir. 2021); *Wilder v. Kijakazi*, 22 F.4th 644, 654 (7th Cir. 2022) (quoting *Butler v. Kijakazi*, 4 F.4th 498, 504 (7th Cir. 2021)) ("We have repeatedly emphasized that 'the harmless error standard applies to judicial review of administrative decisions, and we will not remand a case to the ALJ for further specification where we are convinced that the ALJ will reach the same result'").

The ALJ began her analysis by explaining that plaintiff's statements about disabling limitations were inconsistent with objective evidence. R. 151. Plaintiff does not challenge this finding or dispute that medical records do not support his testimony that he can barely sit, stand, walk, or function. Instead, plaintiff argues

that the ALJ was not allowed to discount his testimony based *solely* on a lack of objective support. Dkt. 17 at 10-11; Dkt. 24 at 5-6. That is not what occurred here. The ALJ also discredited plaintiff's testimony because he did not pursue recommended treatments and follow-up care for his back, hips, and knees, including electrodiagnostic testing and physical therapy. R. 151. Plaintiff faults the ALJ for neglecting her "affirmative duty" to consider his reasons for not pursuing additional treatment. Dkt. 17 at 11; Dkt. 24 at 6-7. Yet there is no indication in the record that plaintiff was unable to afford treatment, could not get appointments, experienced intolerable medication side effects, or had any other explanation for not seeking further care. Plaintiff's speculation that he might have had good reasons if only the ALJ had asked him is not a valid basis to remand the case. *Deborah M. v. Saul*, 994 F.3d 785, 790 (7th Cir. 2021) (rejecting similar argument where the plaintiff did not "identif[y] any specific reason that she did not seek more treatment," and noting that "Rule 16-3p did not require the ALJ to ask Plaintiff about her failure to seek treatment").

In addition to his lack of treatment, the ALJ also noted that plaintiff required minimal medication consisting of Voltaren gel and ibuprofen, and achieved good results with prescriptions for depression and therapy. R. 151. This constitutes another valid basis for concluding that plaintiff's symptoms are not as debilitating as he claims. *See Shaw v. O'Malley*, No. 23 C 969, 2024 WL 3395749, at *5 (E.D. Wis. July 11, 2024) (no error in concluding that plaintiff's "routine medication and therapy treatments, paired with the lack of more intensive treatment, indicated

that his symptoms were not as severe as alleged"). Notably, plaintiff does not address this evidence or explain how it demonstrates that he suffers from work-preclusive pain and functional limitations.

Plaintiff does take issue with the ALJ's observation that his subjective complaints were inconsistent with his activities of daily living, which include household chores, caring for his parents, shopping, paying bills, and reading. R. 150-51. The Seventh Circuit has made clear, however, that "it is entirely permissible to examine all of the evidence, including a claimant's daily activities, to assess whether testimony about the effects of his impairments was credible or exaggerated." *Alvarado v. Colvin*, 836 F.3d 744, 750 (7th Cir. 2016). Plaintiff says the ALJ did not properly consider his limitations in performing the activities, Dkt. 17 at 11-12; Dkt. 24 at 7-9, but the ALJ expressly acknowledged plaintiff's testimony that his wife helps him with chores and that he struggles to function. R. 150-51. And contrary to plaintiff's suggestion, this is not a case where the ALJ equated plaintiff's ability to perform certain activities with an ability to work. Dkt. 24 at 8-9. The ALJ merely noted that plaintiff was able to engage in more robust activities than would be expected for a person with his claimed physical and mental limitations. R. 151. This was entirely proper. *See Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019) ("ALJ did not equate Burmester's ability to perform certain activities of daily living with an ability to work full time. Instead, he used her reported activities to assess the credibility of her statements concerning the

intensity, persistence, or limiting effects of her symptoms consistent with the applicable rules").

There is likewise no merit to plaintiff's objection that the ALJ erred in rejecting the statements from his wife. Plaintiff challenges the ALJ's observation that his wife provided her assessment just four months after plaintiff's hip replacement surgery, arguing that such a "summary conclusion" is "not an actual analysis." Dkt. 17 at 12. As the Commissioner notes, however, the ALJ also explained that the wife's statements were inconsistent with the record as a whole, as set forth throughout the ALJ's detailed discussion. Dkt. 23 at 7; R. 150-58. Plaintiff has waived any objections to this argument by failing to respond to it in his reply brief. *See Patricia H. v. Kijakazi*, No. 20 C 50509, 2022 WL 2439946, at *5 (N.D. Ill. July 5, 2022).

An ALJ's credibility assessment "need not be perfect; it just can't be patently wrong." *Dawson v. Colvin*, No. 11 C 6671, 2014 WL 1392974, at *10 (N.D. Ill. April 10, 2014) (citing *Schreiber v. Colvin*, 519 F. Appx. 951, 961 (7th Cir. 2013)). And "even if reasonable minds could differ on the ALJ's rejection of [plaintiff's] testimony, we will not reweigh evidence or substitute our judgment for the ALJ's." *Zoch v. Saul*, 981 F.3d 597, 602 (7th Cir. 2020). Viewing the record as a whole, the ALJ's assessment of plaintiff's subjective statements and the statements from his wife was not patently wrong and his request to remand the case for further consideration of this issue is denied.

2. **Opinion Evidence**

Plaintiff next argues that the case must be reversed or remanded because the ALJ erred in evaluating the opinion evidence of record. Dkt. 17 at 12-14; Dkt. 24 at 10-13. Since Plaintiff filed his claim in December 2019, the treating source rule used for claims filed before March 27, 2017 does not apply. This means the ALJ was not required to "defer or give any specific evidentiary weight" to any medical opinion, including a treating physician's opinion. 20 C.F.R. § 404.1520c(a). *See also Robert J. L. v. O'Malley*, No. 20 C 50444, 2024 WL 809091, at *2 (N.D. Ill. Feb. 27, 2024). Instead, the ALJ was required to "evaluate the persuasiveness of each medical opinion based on certain factors: (1) supportability; (2) consistency; (3) the medical source's relationship with the claimant; (4) specialization; and (5) other factors, including the source's familiarity with other evidence in the claim or an understanding of Social Security disability policies and requirements." *Michelle D. v. Kijakazi*, No. 21 C 1561, 2022 WL 972280, at *4 (N.D. Ill. Mar. 31, 2022) (citing 20 C.F.R. § 404.1520c(c)(1)-(5)). An ALJ must explain how he considered the first two factors (supportability and consistency) and may but is not required to explain his consideration of the other factors. 20 C.F.R. § 404.1520c(b)(2). "Supportability measures how much the objective medical evidence and supporting explanations presented by a medical source support the opinion." *Michelle D.*, 2022 WL 972280, at *4 (citing 20 C.F.R. § 404.1520c(c)(1)). "Consistency assesses how a medical opinion squares with other evidence in the record." *Id*. (citing 20 C.F.R. § 404.1520c(c)(2)).

Plaintiff argues that the ALJ failed to analyze the supportability and consistency of the opinion from his treating nurse practitioner, Maria D. Pirotte, DNP. Dkt. 17 at 12-13; Dkt. 24 at 10-13. The Court disagrees. On June 25, 2021, Nurse Pirotte completed an RFC assessment indicating that plaintiff can barely function. More specifically, plaintiff: would frequently experience pain or other symptoms severe enough to interfere with attention and concentration needed to perform even simple work tasks; can walk only one to two blocks without rest or severe pain, sometimes less; can sit and stand for 15 minutes at a time before needing to change positions; can stand and walk for less than two hours in an eight-hour workday; can sit for six hours total with frequent position changes; must walk for two minutes every 15 minutes; must take unscheduled breaks every two hours for 15 minutes due to muscular aches and hip pain; can reach with his left arm only 20% of a workday and reach with the right arm for 50% of a workday; can only use his hands to grasp, turn, and twist for 20% of a workday; can perform fine manipulations only 50% of a workday; and would be absent more than four days per month. R. 796-98. Nurse Pirotte also found plaintiff markedly limited in his ability to: understand, remember, or apply information; interact with others; and adapt/manage himself. R. 801.

In rejecting this assessment, the ALJ explained that it was "strikingly inconsistent" with, and unsupported by Nurse Pirotte's own examination findings, which were largely normal aside from a depressed mood, some tangential conversation, and some mild wrist pain. R. 158, 809, 814, 823. It is well-established

that an ALJ may decline to credit an opinion when it "is inconsistent with the [treater's own] treatment notes." *Pavlicek v. Saul*, 994 F.3d 777, 781 (7th Cir. 2021). The ALJ also observed that Nurse Pirotte's dire assessment of plaintiff's mental functioning was inconsistent with evidence from Ignacio Perez, LCSW, and providers at Community Counseling Centers of Chicago showing that plaintiff was in positive spirits and "enjoying walking, sharing goals with enthusiasm and being busy with housework, daily tasks and assisting his parents." R. 158, 911, 917, 920. *Alejandrina A. v. Kijakazi*, No. 20 C 4089, 2023 WL 2539239, at *12 (N.D. Ill. Mar. 16, 2023) (citing *Karr v. Saul*, 989 F.3d 508, 512 (7th Cir. 2021)) (ALJ properly discounted treating physician's statement that was "inconsistent with other objective evidence in the record"). Plaintiff does not point to any records supporting Nurse Pirotte's opinion that he suffers from marked mental limitations.

Further contradicting Nurse Pirotte's assessment are the opinions from state agency reviewers that plaintiff is capable of a reduced range of light work. Judith Kelly, M.D. and Lenore Gonzalez, M.D., opined that plaintiff can: stand and walk for about two hours in an eight-hour workday; sit for more than six hours in an eight-hour workday; occasionally lift and carry 20 pounds; frequently lift and carry 10 pounds; occasionally climb ramps and stairs; and occasionally balance, stoop, kneel, crouch, and crawl. R. 65-66, 105-07. Howard Tin, Psy.D., concluded that despite plaintiff's moderate limitations in interacting with others and maintaining concentration, persistence, or pace, he is able to understand, remember, and carry out short and simple instructions, remember locations and work-like procedures,

13

respond appropriately to changes in work settings, perform simple tasks, be aware of normal hazards and travel in unfamiliar settings, and function in settings requiring limited interaction with the general public. R. 69, 87. The ALJ found these opinions persuasive and adopted the stated restrictions in the RFC. R. 158.

Plaintiff objects that the ALJ did not evaluate the state agency opinions for consistency and supportability as required under 20 C.F.R. § 404.1520c. Dkt. 17 at 13; Dkt. 24 at 10-12. It is true that the ALJ did not use those specific words. Regardless, it is clear from the decision as a whole, including the ALJ's detailed recitation of the evidence, that she found the state agency opinions consistent with and supported by records showing largely normal to mild/moderate findings during exams and diagnostic testing. R. 151, 152, 154-55, 515, 541-44, 593-98, 604, 752, 823. *See Zellweger v. Saul*, 984 F.3d 1251, 1254-55 (7th Cir. 2021) (a reviewing court should read an ALJ's decision holistically); *see also Samantha B. v. O'Malley*, No. 23 C 166, 2025 WL 71736, at *3 (N.D. Ill. Jan. 10, 2025) (quoting *Jones v. Astrue*, 623 F.3d 1155, 1160 (7th Cir. 2010)) ("'Rather than nitpick the ALJ's opinion for inconsistencies or contradictions,' this Court must give the ALJ's decision 'a commonsensical reading.'").

That leaves plaintiff's argument that the ALJ erred by omitting one particular restriction from Dr. Tin's opinion, namely, a limitation to one- to two-step tasks. Dkt. 17 at 13-14; Dkt. 24 at 12-13. This argument fails because the ALJ explained that plaintiff was able to engage in activities that involve more than one and two step tasks, including cooking, paying bills online, shopping online, banking

14

(in person), and organizing, planning, and leading his mother's funeral. R. 158. Moreover, the ALJ accepted the VE's testimony that plaintiff can perform two categories of jobs (final assembler and sorter) that have a reasoning level of 1, meaning they involve only one- to two-step tasks. R. 51, 159. *Perry v. Colvin*, 945 F. Supp. 2d 949, 964 (N.D. Ill. 2013) (one- and two-step task limitation "translates to Reasoning Level 1"). Thus, any error the ALJ may have made in excluding the restriction was harmless. *Wilder*, 22 F.4th at 654; *Butler*, 4 F.4th at 504.

Plaintiff may disagree with the ALJ's assessment of the opinion evidence, but "this Court does 'not reweigh the evidence, resolve debatable evidentiary conflicts, determine credibility, or substitute [its] judgment for the ALJ's.'" *Bridget T. M. v. O'Malley*, No. 21 C 50290, 2024 WL 4347193, at *2 (N.D. Ill. Sept. 30, 2024) (quoting *Gedatus*, 994 F.3d at 900). The Seventh Circuit has made clear that "[s]ubstantial evidence is not a high hurdle to clear." *Bruno v. Saul*, 817 F. Appx. 238, 241 (7th Cir. 2020). Viewing the record as a whole, the ALJ's decision meets that threshold and plaintiff's request to remand the case for further consideration of the opinion evidence is denied.

### 3. RFC Determination

Plaintiff finally argues that the RFC determination fails to account for his moderate limitations in concentration, persistence, or pace ("CPP") and his seizures. Dkt. 17 at 14-16; Dkt. 24 at 13-16. A claimant's RFC is the maximum work that he can perform despite any limitations. 20 C.F.R. § 404.1545(a)(1); SSR 96-8p. "[T]he responsibility for the RFC assessment belongs to the ALJ, not a physician, [but] an

15

ALJ cannot construct his own RFC finding without a proper medical ground and must explain how he has reached his conclusions." *Bronwen M. v. Kijakazi*, No. 22 C 50153, 2023 WL 6388207, at *2 (N.D. Ill. Sept. 29, 2023) (quoting *Amey v. Astrue*, No. 09 C 2712, 2012 WL 366522, at *13 (N.D. Ill. Feb. 2, 2012)).

As noted, the ALJ found that despite plaintiff's moderate limitations in CPP, he can understand, remember, concentrate, and persist sufficiently to perform simple, routine, and repetitive tasks, and can follow both simple and detailed but uninvolved oral, written, or diagrammed instructions in a low stress environment defined as having simple work-related decisions and routine changes in the work setting. R. 149. Plaintiff objects that restrictions to simple and routine tasks do not accommodate moderate limitations in CPP. Dkt. 17 at 14-15; Dkt. 24 at 13-14 (citing *DeCamp v. Berryhill*, 916 F.3d 671 (7th Cir. 2019)). But plaintiff ignores that "where a consulting physician translates a finding of moderate limitations in concentration, persistence, or pace into an RFC for simple, routine work, the ALJ may rely on that opinion in assigning the RFC." *Youmans v. Colvin*, No. 14 C 7609, 2016 WL 3595729, at *6 (N.D. Ill. July 5, 2016) (citing *Varga v. Colvin*, 794 F.3d 809, 816 (7th Cir. 2015)). Here, Dr. Tin translated plaintiff's moderate limits in CPP to an RFC for simple tasks with simple instructions, R. 69, 87, and the ALJ did not err in relying on that translation. *See Pavlicek*, 994 F.3d at 783 (ALJ reasonably relied on consultants' narrative RFC assessments).

With respect to what plaintiff terms seizures, the record actually indicates that plaintiff has a long history of experiencing episodes of syncope (fainting)

16

associated with laughing and coughing. R. 148, 728-29. The ALJ fully considered these episodes but noted that plaintiff was able to work for many years despite the condition, EEGs were normal, and the only recommended treatment was avoiding triggers. R. 148, 153, 154, 728, 752. Nevertheless, the ALJ accounted for the episodes by limiting plaintiff's exposure to heights, hazards, and commercial driving. R. 153. Plaintiff argues that his syncope is not triggered by such environments or activities, Dkt. 17 at 15, but the ALJ never said it was. The ALJ simply explained that these restrictions "address any potential difficulties," which would include a risk of injury to plaintiff or others if he fainted. R. 153.

As for plaintiff's assertion that he experiences confusion and fatigue following a syncopal episode requiring him to lay down and nap, the evidence does not bear this out. Dkt. 17 at 15. In March 2020, for example, plaintiff stated that it takes him only 30 seconds to return to baseline after an episode. R. 729. Plaintiff gave a similar report in September 2020, confirming that immediately after an episode he has virtually no issues aside from a few seconds of "very mild confusion" that resolves after 10 seconds. He also specifically denied feeling tired afterwards. *Id.*

Viewing the record as a whole, the ALJ's RFC determination adequately accounted for plaintiff's moderate limitations in CPP and syncope episodes, and that finding is supported by substantial evidence. *See Jarnutowski v. Kijakazi*, 48 F.4th 769, 773 (7th Cir. 2022) (courts "apply a very deferential standard of review to the ALJ's decision"); *Karr v. Saul*, 989 F.3d 508, 511 (7th Cir. 2021) (substantial

evidence is "not a high threshold"). Plaintiff's request to remand the case for further consideration of this issue is denied.

## CONCLUSION

For the reasons stated above, plaintiff's request to reverse or remand the case is denied, and the Commissioner's motion for summary judgment [22] is granted. The Clerk is directed to enter judgment in favor of the Commissioner.

**SO ORDERED.**

_____
**Jeannice W. Appenteng**
**United States Magistrate Judge**

Date: 3/19/2025

18